[File No. 7074]

ROY H. KERN, Respondent, v. CHARLES KELNER, Appellant.

(32 NW2d 169)

704

Opinion filed April 22, 1948

*Theo. B. Torkelson and Crawford & Reichert,* for appellant. *Mark H. Amundson and Mackoff, Kellogg & Muggli,* for respondent.

CHRISTIANSON, Ch. J.   This is a sequel to Kern v. Kelner, *ante,* 292, 27 NW2d 567.   The action is one for specific performance of a written contract between the plaintiff and the defendant.   By such contract the plaintiff was given an option

'to purchase from the defendant a tract of land in Bowman County in this state. The trial court found in favor of the plaintiff and rendered judgment in his favor for specific performance. The defendant appealed and this court rendered its decision that the judgment appealed from be reversed and the case remanded for further proceedings in conformity with law. Kern v. Kelner, *ante*, 292, 27 NW2d 567, 573. .

The remittitur transmitted to the district court, conformed to the decision and the opinion of this court, and directed that the judgment appealed from be "reversed and the case remanded to the district court for further proceedings in conformity with law" and the order of this court.

After the case had been remanded, the district court entered its order that the judgment formerly entered by that court, be "reversed and set aside and vacated and declared of no force and effect;" and that "further proceedings be had in the above entitled case in conformity with the opinion and order of the Supreme Court in the above entitled case and in conformity with law."

Thereafter the plaintiff moved the district court pursuant to notice for leave to file a supplemental complaint setting forth certain matters that had occurred subsequent to the rendition of the former judgment, among others, that the plaintiff had made tender of an additional sum of $2,010.48; that the defendant had refused such tender and that upon such refusal the plaintiff had deposited the amount tendered to the credit of the defendant in a bank of good repute in this state. At the hearing of such motion the defendant appeared by his counsel and objected to the granting of the motion and also made a countermotion that the trial court render judgment dismissing plaintiff's action and also dismissing defendant's counterclaim. After the hearing the trial court made an order granting plaintiff's motion for leave to file a supplemental complaint and denying defendant's motion for dismissal of the action. This appeal is from such order.

In the final analysis the questions presented on this appeal

resolve to whether the judgment rendered by the trial court after the remand was contrary to the decision and the order of this court on the former appeal.

It is the contention of the defendant that under the decision of this court on the former appeal the trial court had no discretion as to the proceedings to be had in the District Court; that there was only one judgment that could be ordered and entered in conformity with law, namely, one for a dismissal of the action.

This contention cannot be sustained. In the opinion on the former appeal this Court said:

"This is an action for specific performance of a written contract wherein the plaintiff was given an option to buy the land hereinafter described. The trial court found for the plaintiff and the defendant appealed demanding a retrial in this court.

"Fundamentally the determination of one major fact settles the dispute. In December 1930, the defendant loaned to the plaintiff $3,000, and obtained his promissory note for this amount due in one year with interest at 8%. The plaintiff had the note signed by his father and his mother, as joint makers. Owing to the financial condition of the plaintiff the defendant made little attempt to collect the money due, no part was paid and the statute of limitations ran against suit. From time to time thereafter defendant tried to induce the plaintiff to make payments on the note but it was not until November 30, 1940, that the parties came to an agreement. At that time the debt amounted to over $5,000 and on November 30, 1940, the plaintiff gave to the defendant his note for $3,000 due November 30, 1942, with interest at the rate of 2% per annum payable annually, the interest not paid when due to bear interest at the same rate.

"On November 28, 1941, the defendant, being the owner of the land involved, entered into a written contract with the plaintiff for the renting of this land to the plaintiff 'during the season of farming in the year 1942 and subsequent years as hereinafter provided.' This contract contains the common, usual printed

provisions of such contracts between landlords and tenants to the effect the tenant was to furnish all of the power and machinery necessary and farm in a good and husbandlike manner 'and not to sell or remove . . . any of the produce of said farm . . . of any kind . . . until division thereof, without the written consent of the' defendant 'and until such division the title and possession of all hay, grain, crops and produce raised, grown or produced on said premises and proceeds of each of the same, shall be and remain in the' defendant. . . .

"The defendant had the right to hold any portion of the crop that would belong to the plaintiff in case the latter should fail to fulfill his contract, in order to reimburse the defendant for any payments he was required to make, and one of such payments was the hail lien hereinafter mentioned. The contract further contains this very significant paragraph: 'It is further understood and agreed between the parties that whereas the said party of the second part is indebted to the party of the first part upon a promissory note of three thousand dollars, dated the 30th day of November, A.D. 1940, with interest thereon at the rate of two per cent per annum, all of the crops to be raised by the party of the second part upon the said premises each year during the life of this contract shall be delivered to the order of the party of the first part at the Scranton Equity Exchange at Scranton, North Dakota; that the value thereof shall be determined as of the market price thereof on the 1st day of October of the year in which delivered, unless otherwise agreed upon by the parties hereto; and of the proceeds so to be determined, the one-fourth shall be considered as rental due the party of the first part for the use of the said land, and the remaining three fourths thereof shall be applied toward the payment of the said promissory note of three thousand dollars hereinbefore mentioned and the interest thereon, until the same shall have been fully paid; and in the consideration of the premises, the party of the first part hereby grants to the party of the second part an option to purchase the said premises from the party of the first part for the sum of twelve hundred fifty-eight dollars and 85 cents;

which option may be exercised within one year after the said note shall have been fully paid, but not otherwise:'

"In this contract the plaintiff is the party of the second part and the defendant is the party of the first part. The foregoing phrase 'in consideration of the premises' means in this case in consideration of all the antecedent conditions and obligations of the contract.

"On the day this contract was executed the plaintiff paid $200 upon the said note, $60 of which was applied upon the interest, and credit was given the plaintiff for $140 reducing the principal to $2,860.

"In 1942 the plaintiff raised a crop of 2,527 bushels and 20 lbs. of wheat on the land. This is the plaintiff's own allegation. Under the terms of the contract the defendant had title to all of this grain, but it was his duty to credit three fourths of the value of said crop as determined by the price of wheat on October 1, 1942, upon the note in question unless the plaintiff owed him anything under the farming operations. There was but one item which the plaintiff owed—a hail lien mentioned later. However, the defendant had the right to retain for himself 631 bushels and 50 pounds of wheat. The title to this was in the defendant, and this grain was in fact the rent. The value of the grain on the first day of October 1942, as found by the trial court and not disputed by either party was 95¢ per bushel, and for convenience we call the amount of wheat to be credited 1,896 bushels.

"There was no crop matured in 1943, owing to hail but the record shows the plaintiff had the crop insured against hail and there was a hail lien impressed upon the land and all of the crop to be raised in 1943, amounting to $57.60. The plaintiff admits he owed this and on the trial of the case he agreed this should be collected by the defendant out of this 1942 crop.

. . . .

"On November 20, 1943, the plaintiff drew his check on the First National Bank of Bowman for $478.58 and another check on the same date for $473.05, or $951.63 in all which checks he tendered the defendant, the former as 'payment on principal

of note' and the latter as payment of the 'balance on principal, also Int. and Hail tax.' (Quotations from his checks.) He then on the same day drew another check on the First National Bank of Bowman for $1,258.85 which he described as 'payment in full for land'. These checks were placed on a desk for the defendant and in his presence; but defendant said the amount was not enough. He did not refuse them on the ground they were checks. The plaintiff then took them, and later produced them on the trial.

"Though there was no crop in 1943 the plaintiff raised a crop on this land in 1944. On the trial the defendant attempted to show the amount and the nature of the crop, but objection thereto made by the plaintiff was sustained by the court. However, there is no dispute but what a crop was raised on the land.

"In March 1945, the plaintiff served the following notice upon the defendant."

(The notice is dated March 29, 1945, is addressed to the defendant, Charles Kelner, and signed by the plaintiff, Roy Kern, and states:

"You will please take Notice that I have today deposited to your credit in the First National Bank of Bowman, North Dakota, the sum of $2210.48 in full payment of the land hereinafter described, in full payment of that certain contract entered into by and between you and the undersigned November 28, 1941, and in full payment of that certain note made, executed and delivered by the undersigned to you, November 30, 1940 in the sum of $3,000.00 with interest at 2% per annum. . . ." The notice concludes with a demand that the defendant convey the land described in the contract to the plaintiff by a good and sufficient deed.)

"This action was commenced in May 1945. All of the 1942 crop amounting to 2,527 bushels and 20 pounds belonged to the defendant. There was no agreement between the parties as to the change of basis of calculation of value, therefore the defendant calculated the value at the going price on October 1, 1942, being the year of delivery. . . . Assuming the defendant got

every bushel of that grain to apply on the indebtedness, other than what he retained for the rent, the utmost that he was required to credit therefrom on the note at 95¢ per bushel would not pay the indebtedness. The contract is one and indivisible. The plaintiff so agreed and the defendant had the right to insist on fulfillment according to the terms. The land was his.

"The controversy turns upon the right of the plaintiff to exercise this option. On the trial of the case the court found the plaintiff had not deposited a sufficient amount of money to pay the defendant for all of the crop raised in 1942, and to pay for the rent, and required the plaintiff to make a further deposit exceeding $200 to be paid into the court for the benefit of the defendant. Thus, it is clear that when the plaintiff brought this action he had not paid the note in full. Even with extra tender of money the trial court found he had not paid in full and it is clear from the facts, as we find them, that the note never was paid in full even with the deposits. . . .

"The option given the plaintiff by the defendant could not be exercised by the plaintiff until after the note had been fully paid. It could not be otherwise exercised. After the note was paid in full the plaintiff had one year in which to exercise his option. . . .

"The contract was still in existence. The plaintiff was farming the defendant's land under that contract. While we do not know the amount of the crop of 1944 there is no contention on the part of the plaintiff that he turned that crop over to the defendant in accordance with the contract.

"When he made his alleged tender and deposited the same in the bank it was long after the 1944 crop matured. The burden of proof is upon the plaintiff to show that he performed the contract in accordance with its terms before he could exercise his option. He had not paid the note in full. We do not know what was the amount of the grain raised in 1944 nor its value on the first day of October 1944. All we know is that there was a crop raised and that crop was the defendant's crop as up to that time at least the note had not been paid in full.

"In his answer the defendant prays that 'the said option granted to the plaintiff to purchase said land be cancelled and terminated . . . .' This we cannot do. The contract is still in effect. It is one and indivisible with three main provisions:—First, deduction of one fourth of each year's crop as rent; Second, the application of three fourths of each year's crop on the note, or as much thereof as may be necessary until the note is paid, thereafter the three fourths of the crop is delivered to the tenant; Third, within one year after satisfaction of the note and of the rent due, the plaintiff may exercise his option. . . .

"Since there was no conversion and thus the value of the crop is to be determined on the first day of October of the year of delivery, and as it belonged to the defendant it was the duty of the tenant to turn over the grain immediately.

"When the plaintiff undertook to pay up his note, put a deposit in the bank he had not given his landlord the crop of 1944. He was not fulfilling the terms of the contract for the contract was still in existence. Had he delivered the crop of 1944, the defendant would have one fourth thereof for rent, would credit the plaintiff on the note for whatever was necessary to pay up the note and then would deliver the remainder of the three fourths if any to the plaintiff. It must be noted that whatever the plaintiff offered the defendant in the fall of 1943 was not sufficient to pay the note. The checks were not accepted by the defendant and no deposit in the bank was made as to the full amount necessary to pay the note. Hence, no legal tender of any amount was made or attempted to be made until March 1945, and after the 1944 crop which belonged to the defendant was raised. The record indicates this 1944 crop was kept by the plaintiff. As pointed out this action is one in specific performance based upon an attempt to exercise the option. But the time in which the plaintiff could exercise his option had not commenced when the action was begun nor had the right accrued at the time of trial and it is clear the plaintiff never accounted for the 1944 crop."

The opinion on the former appeal also shows that one of the

principal points in controversy between the parties related to the interest of the respective parties in the crops produced under the contract. It was the contention of the plaintiff that he was the owner of all the grain produced; that the contract merely created a chattel lien in favor of the plaintiff; and it was thus contended that where the defendant exercised rights of ownership and disposed of grain which had been produced in the year 1942 at some time subsequent to October 1, 1942, and at a higher price than the market price on October 1, 1942, the plaintiff would be entitled to credit upon the note for the price for which the grain was sold and not merely the price stipulated in the contract, namely, the market price on October 1st. The decision on the former appeal settled the question of ownership of the crops and questions incident thereto. Indeed as the above quoted portions of the opinion on the former appeal show the decision there definitely settled the rights and obligations of the parties under the contract; but they also show that the controversy between the parties arising out of such contract has not been finally disposed of.

It was settled by the opinion and decision of this court on the former appeal:

1. That the contract between the parties is still in effect.

2. That the defendant is the owner and entitled to receive and hold all grain produced on the premises, until the note has been fully paid.

3. That the defendant is entitled to retain one-fourth of the crops produced for rent for the land and that he is required to apply the remaining three-fourths of the crop each year as payment upon the note, at the market price on October 1st in the year in which the crop is produced and received, unless it is otherwise agreed between the parties.

4. That after the note is paid in full, the defendant is required to deliver to the plaintiff all of the crop remaining after deducting the one-fourth for the rent of the land.

5. That after the note has been paid in full and all amounts required for rent and for payment to the defendant of any amount owing to him under the terms of the contract, the plain-

tiff has the right to exercise the option to purchase the land within one year after he has fully discharged all his obligations under the contract including payment of the note, and payment of the rent in accordance with the terms of the contract.

As pointed out in the opinion on the former appeal the record on that appeal showed that the plaintiff had not paid the note in full nor had he made payment in full of the rent for the land. The plaintiff had not delivered to the defendant the crop produced in 1944, or any part thereof, and while the evidence showed that the crop had been produced there was no showing as to what had been produced. With these facts before it this court directed that the judgment appealed from be reversed and the cause remanded to the district court for further proceedings in conformity with law.

A certified copy of the opinion of this court was transmitted to the district court with the remittitur, as provided by the laws of this state, ND Rev Code 1943, 28-2730. It was the duty of the trial court to examine the remittitur and the opinion of the court transmitted with the remittitur and to determine from what was there said and the nature of the case what further proceedings might properly be had in the action in conformity with law, consistent with the decision and order of this court. 3 Am Jur 729, 730, Appeal and Error; 5 CJS 1510, 1511; People ex rel. Callahan v. De Young, 298 Ill 380, 131 NE 801; Rogers v. Hill, 289 US 582, 587, 77 L ed 1385, 1389, 53 S Ct 731, 88 ALR 744, 749. In specific performance the trial court is given a liberal discretion in allowing supplemental pleadings, or amendments to the pleadings. 58 CJ p 1175. See also 49 CJ p 573, § 798d.

This court did not direct that final judgment be entered or give specific directions as to the judgment to be entered, it directed instead that the judgment appealed from be reversed and the cause be remanded for further proceedings in conformity with law and the order of this court. This court did not undertake to say what further proceedings law and justice did or might require. Ex parte Medway, 21 Wall (US) 504, 23 L ed 160. Hence, the trial court was left free to make any order

or direction in the further progress of the case not inconsistent with the decision and opinion of this court and conformable to law and justice. 3 Am Jur 729, 730, Appeal and Error; 5 CJS 1510, 1511; People ex rel. Callahan v. De Young, 298 Ill 380, 131 NE 801; Rogers v. Hill, 289 US 582, 587, 77 L ed 1385, 1389, 53 S Ct 731, 88 ALR 744, 749.

The appellant cites the decision of this court in Orth v. Procise, 42 ND 149, 171 NW 861, in support of the contention that the term, "judgment reversed" means final disposition of the case and excludes the idea of any further trial; and argues that under the rule of that decision the only judgment that properly could be ordered in this case is one for a dismissal of the action.

We do not agree. The facts in Orth v. Procise readily distinguish it from this case. In that case personal judgment was rendered against defendants on a promissory note secured by a mortgage. In the trial court and again in this court one of the defendants asserted as a defense that she had executed the note without any consideration, and had been induced to execute it by false and fraudulent representations made to her by the cashier of the payee bank. This court reviewed the evidence and held that her signature to the note had been obtained by false and fraudulent representations; and that she had received no consideration, and directed that the judgment be "reversed". Orth v. Procise, 38 ND 583, 165 NW 557.

After the case had been remanded to the district court the plaintiff in the action contended that under the decision of this court the plaintiff was entitled to a new trial. The application for a new trial was denied by the trial court and the plaintiff appealed to this court. This court sustained the order of the trial court denying a new trial. Orth v. Procise, 42 ND 149, 171 NW 861. The decision of this court on the first appeal in Orth v. Procise merely provided: "judgment reversed". In the instant case the decision directs that "the judgment is reversed and the case is remanded for further proceedings in conformity with law." The opinion of the court on the first appeal in Orth v. Procise clearly indicated that the controversy between

the parties had been finally determined. (See Syllabus paragraph 2, 42 ND at 150, 171 NW 861.) The opinion on the former appeal in this case shows that the controversy between the parties has not been finally disposed of.

The defendant contends that the trial court erred in permitting the plaintiff to serve and file a supplemental complaint. Incident to this contention he calls attention to the fact that the order permitting the serving and filing of a supplemental complaint contains no provision permitting the defendant to answer such complaint. We are agreed that the trial court was not inhibited from granting permission to serve and file a supplemental complaint. When a cause is remanded generally to the lower court for further proceedings, and where there are no directions to the contrary, the lower court has authority where the nature of the case makes that necessary or proper to grant permission to amend the pleadings or to file supplemental pleadings. 3 Am Jur 737, 738, Appeal and Error, § 1241; 5 CJS p 1522; Rogers v. Hill, 289 US 582, 587, 77 L ed 1385, 1389, 53 S Ct 731, 88 ALR 744, 749; State Farm Mut. Auto. Ins. Co. v. Duel, 324 US 154, 89 L ed 812, 65 S Ct 573; Davis v. Stewart, 67 Cal App2d 415, 154 P2d 447, 449; Seymour State Bank v. Pettler, 166 Wis 450, 166 NW 40. See also Ziolkowski v. Continental Casualty Co. 365 Ill 594, 7 NE2d 451; Dickinson v. Carroll, 21 ND 271, 130 NW 829, 37 LRA NS 286. But when the plaintiff is permitted to serve and file a supplemental complaint the defendant should be afforded an opportunity to answer the same. 5 CJS p 1519.

It follows from what has been said that the trial court did not err in rendering the judgment which it rendered or in granting to the plaintiff permission to serve and file a supplemental complaint, however, the defendant is entitled to an opportunity to interpose his pleading in answer to such complaint. Accordingly the judgment appealed from is affirmed, but the order permitting the plaintiff to file a supplemental complaint will be modified so as to permit the defendant within 30 days after the filing of the remittitur in the office of the clerk of the district court to serve and file his pleading in answer to

such supplemental complaint, and as so modified the order appealed from is affirmed.

NUESSLE and BURKE, JJ., and GRIMSON and HUTCHINSON, District Judges, concur.

BURR and MORRIS, JJ., did not participate.