Alvin C. BJERKEN et al., Plaintiffs and Appellants,

v.

AMES SAND AND GRAVEL COMPANY, INC., and Schultz & Lindsay Construction Co., Defendants and Respondents.

Civ. No. 8829.

Supreme Court of North Dakota.

Jan. 19, 1973.

Rehearing Denied April 19, 1973.

Solberg & Stewart, Fargo, for plaintiffs and appellants.

Dosland, Dosland & Nordhougen, Moorhead, Minn., for defendant and respondent Ames Sand and Gravel Co., Inc.

Huseby & Backes, Fargo, for defendant and respondent Ames Sand and Gravel Co., Inc.

Lanier, Knox & Olson, Fargo, for defendant and respondent Schultz & Lindsay Construction Co.

TEIGEN, Judge.

This is the sequel to Bjerken v. Ames Sand and Gravel Company, 189 N.W.2d 366 (N.D.1971). All of the issues except one were settled in that appeal. We reversed the judgment of the trial court and remanded the case with instructions to the trial court "to determine the amount due the Bjerkens by the defendants Schultz & Lindsay Company and Ames Sand and Gravel Company, Inc., pursuant to the minimum requirements of the lease without considering the payments made by Schultz & Lindsay Company for the reject sand." The trial court erroneously construed our remand to require a new trial on that issue.

In the first trial the status of the record on this issue was as follows: By answer to the plaintiffs' complaint the defendants admitted that they had paid to the plaintiffs a total of $239,339.84 during the lease term. The lease required minimum payments equaling $250,000 over the ten-year term. The parties had also entered into a written stipulation in February 1970 following a pretrial hearing, which stipulation was submitted to and accepted by the court at the trial. The court entered an order providing that the stipulated facts were true and correct and that no further proof of the facts contained therein was necessary. In brief the stipulation provides: (1) that the total amount paid to the plaintiffs under the terms of the lease was $239,339.84, all of which was paid by Schultz & Lindsay Construction Company and Clay County Sand & Gravel Company; and (2) that the total amount of material removed from the leased premises was 1,026,038.7 tons of rock, sand and gravel, plus 226,495 cubic yards of pit-run gravel, which amounts are shown on a summary statement prepared by Schultz & Lindsay Construction Company; that none of these materials were removed by Ames Sand and Gravel Company, Inc. A conversion table for converting tons of sand and rock into cubic yards is contained in the stipulation. It was also established that the defendants had removed less material than they had paid for, including a quantity of reject sand which was not covered by the terms of the lease but by a collateral agreement.

The trial court, while directing a new trial on remand, also determined that the stipulation described above was no longer in effect and therefore was not applicable to the new trial. This ruling was made, without application being made by either party, over the strenuous objection of the attorney for the plaintiffs who contended that the trial court should make a determination of the amount due the Bjerkens on the basis of the record at the first trial. This objection was overruled and the defendants were then permitted to introduce new evidence of payments made during the lease term, which payments did not compare with their previous admission by answer or by the stipulation. According to the new evidence produced by the defendants they had paid the sum of $264,740.23 to the plaintiffs during the lease term. This total exceeds the $250,000 minimum payment required by the lease by $14,740.23. The defendants then reintroduced into evidence the summary statement furnished the plaintiffs by the defendants prior to the first trial as proof of the amount of materials removed, including the reject sand. This was the same summary statement which supplied the facts for the stipulation accepted by the court in the first trial and which contains the figure of $239,339.84 as "payments made". It was reintroduced in the new trial to establish the fact that the defendants had not removed materials in excess of the $250,000 minimum payment requirement of the lease. The summary statement also established the tons of reject sand which had been removed from the premises by the defendants during the lease term and its value was computed thereon at $6,442.37. The statement, however, was not introduced in proof of the payments made. The defendants then rested and were granted leave by the court to amend their pleadings to conform to the proof.

The plaintiffs introduced no testimony to refute the evidence introduced by the defendants but elected to stand on the record made at the first trial, including the stipulation of facts as to payments made and amounts of materials removed. They did, however, introduce evidence that they had relied on the summary statement furnished them by the defendants and that that statement induced them to commence the action to recover the deficiency.

The trial court found that the defendants had paid the plaintiffs $264,740.23 during the term of the lease, from which it subtracted $6,442.37, the amount paid for reject sand, which left a balance of $258,297.86 applicable as lease payments. From this amount the trial court then subtracted the minimum of $250,000 required under the lease and arrived at a balance in excess of the minimum of $8,297.86. The trial court also found that the defendants had not removed materials in excess of the minimum requirements of the lease and entered judgment on remittitur in the amount of $8,297.86 in favor of the defendants on their counterclaim, which had been amended to conform with the proof.

The plaintiffs on this appeal specify that the trial court erred in granting a new trial on this issue and in rejecting the stipulation. They argue that the trial court misconstrued our remand, which required that court to determine the amount due the plaintiffs from the defendants pursuant to the minimum requirements of the lease without considering the payments made for reject sand.

It is clear that the records and books of account from which the computations were made at both trials were at all times in the possession of the defendants, and that the plaintiffs relied upon the summary statement submitted by the defendants to the plaintiffs following the close of the ten-year lease term as to the amount of materials mined and the total payments made by the defendants to the plaintiffs during the lease term. It was this summary statement, which consists of an accounting made by the defendants and given to the plaintiffs, that prompted them to institute this action to recover the difference between the amount of the payments made, as shown by the summary statement, and the minimum payment required under the terms of the lease. The defendants' counterclaim at the first trial sought to recover the difference between the value of the materials removed from the leased premises and the amount paid or, in the alternative, to be permitted to mine and remove from the premises additional material equivalent to the overpayment at the lease rate. We denied the defendants' counterclaim on this issue in our first opinion when we held in paragraph 5 of the syllabus:

> "When the terms of a lease required that a lessee remove and pay for a minimum of 1,250,000 cubic yards of material within the first ten years of the lease, the lessee was required not only to pay the minimum required over the ten-year period, but was also required to remove from the premises within that period the 1,250,000 cubic yards of material or forfeit the right to do so." Bjerken v. Ames Sand and Gravel Company, *supra*, 189 N.W. 2d at 367.

In the new trial upon remand the defendants have changed their position. They no longer claim that they are entitled to recover the overage paid or, in the alternative, to mine the minimum amount of materials required under the lease. They have accepted our decision on that issue and have abandoned the counterclaim as originally pleaded. At the new trial they have taken a new position, to wit, that they had paid in excess of the minimum amount required by the lease but had not mined and removed material equivalent in value to the $250,000 minimum payment requirement of the lease and, therefore, should be entitled to recover the difference between these two amounts. It is apparent that had the defendants furnished the plaintiffs with a summary statement at the end of the lease

term disclosing payments of $264,740.23 as now claimed, they would not have been misled and induced to institute an action for the difference between the minimum requirements under the lease and the amount represented as having been paid.

The course taken by the trial court in interpreting our remand as requiring a new trial was not anticipated by this court. It was our intent that the trial court "determine the amount due the Bjerkens by the defendants Schultz & Lindsay Company and Ames Sand and Gravel Company, Inc., pursuant to the minimum requirements of the lease without considering the payments made by Schultz & Lindsay Company for the reject sand." Therefore this case is distinguished from Kern v. Kelner, 75 N.D. 703, 32 N.W.2d 169 (1948), cited by the defendants in support of their argument that the trial court was given a liberal discretion in the post-remand proceedings.

We find upon reconsideration of the evidence produced at the original trial, including the stipulation, plus the evidence adduced at the post-remittitur proceeding, that the computation which we directed the trial court to make is a simple one. The lease calls for annual minimum payments of $25,000 over the ten-year period of the lease. This equals $250,000. According to the stipulation the total amount paid was $239,339.84. Subtracting this amount from the $250,000 minimum leaves a deficiency of $10,660.16. In making this determination we find that the trial court erred in its post-remand proceedings when it declared that the stipulation was no longer in effect. The stipulation contains no limitations as to time and purpose and was received in evidence at the first trial. At the opening of the post-remand proceedings the trial court, without an application for relief having been filed or a showing of good cause, declared on its own motion that the stipulation was no longer in effect. We find that the stipulation resulted in an agreed case upon the question of the claimed deficiency as to the minimum payment required under the lease. The only question remaining was one of law: Should the defendants be entitled under their counterclaim to receive a refund for the overage paid or, in the alternative, to mine additional material. This question was settled in our first opinion when we determined that the defendants had the privilege of removing 1,250,000 cubic yards of material during the ten-year lease period or would forfeit the right to do so.

The stipulation is in the nature of a contract and a party may not be relieved therefrom without first making application to the court and upon a showing of good cause. 50 Am.Jur. Stipulations, § 14; 83 C.J.S. Stipulations § 34. A stipulation of facts was made in Northern Pac. Ry. Co. v. Barlow, 20 N.D. 197, 126 N.W. 233 (1910). In reversing an order of the trial court granting an application to be relieved from a stipulation we held:

"The making of such stipulations should be encouraged rather than discouraged by the courts, and enforced unless good cause is shown to the contrary, and applications to be relieved from stipulations should be seasonably made. Parties will not be relieved from such stipulations in the absence of a clear showing that the fact or facts stipulated are untrue, and then only when the application for such relief is seasonably made, and good cause is shown for the granting of such relief."

See also Mongeon v. Burkebile, 79 N.D. 234, 55 N.W.2d 445 (1952).

In Schott v. Enander, 73 N.D. 352, 15 N.W.2d 303 (1944), we ordered that the record in the case be remanded to the district court for such amendments to the pleadings and the admission of such further evidence as the trial court might deem to be in the interests of justice, and then directed the trial court to make further findings and conclusions and cause the record to be settled, certified and returned to this court. In the proceedings that followed in the district court the plaintiff moved to withdraw the stipulation which had been read into the

record at the original trial. The motion was resisted but the trial court did not rule on the motion and permitted evidence to be received. Upon return of the record to this court we stated:

"Stipulations entered into dealing with important phases of a lawsuit cannot be lightly treated. They are solemn and binding obligations of the parties. If relief is sought it must be upon a proper showing of diligence and justice. * * * In this case the stipulation was made in open court between counsel during the progress of the trial on July 21, 1943. It came to this court unchallenged with the original appeal and cannot now be disturbed by this court without a proper showing and an order having been made in the court below." Schott v. Enander, *supra,* 15 N.W.2d at 307.

The general rule is stated as follows:

"The general rule is that where a stipulation is distinctly and formally made for the express purpose of relieving the opposing party from proving some fact or facts, or where a formal admission of facts is made by counsel and becomes a part of the record, such a stipulation or admission, provided it is not by its terms limited to a particular occasion, or a temporary object, can be introduced in evidence and is available as proof of the facts admitted upon a subsequent trial of the same action, unless the court permits its withdrawal upon proper application therefor." 100 A.L.R., Anno.—Stipulation of Facts—Availability, at 776.

"Under most authorities, an agreed statement of fact not limited by its terms to the trial at which it is made is admissible on a subsequent trial of the same cause between the same parties." 83 C.J.S. Stipulations § 25(2); LeBarron v. City of Harvard, 129 Neb. 460, 262 N.W. 26 (1935).

■ The stipulation establishes the existence of certain facts. The truth of these facts was disclosed by the defendants from their books and records which were continuously in their possession. No application was ever made by the defendants to be relieved from the terms of the formal, solemn, judicial stipulation, the legal effect of which was so adjudicated by the trial court. The stipulation is conclusive upon the parties, at least until they are properly relieved from it. Its terms are not in defiance of law and do not constitute a fraud on the court as in Schouweiler v. Allen, 17 N.D. 510, 117 N.W. 866 (1908), and Le Pire v. Workmen's Compensation Bureau, 111 N.W.2d 355 (N.D.1961). Obviously the court could not relieve the parties of its effect in the absence of a hearing based on an application, a showing of good cause and unless such action may be taken without prejudice to either party. Schott v. Enander, *supra*; 83 C.J.S. Stipulations § 34; 50 Am.Jur. Stipulations, § 14.

■ Under the circumstances of this case parol evidence was not admissible to contradict that portion of the stipulation stating the total amount paid during the lease term, and for that purpose the objections to the offer of this additional evidence should have been sustained. However the evidence is relevant and material to the post-remand proceeding as directed by the court and we will therefore review it to determine that question.

We come now to the question of the payments for the reject sand. Although the trial court erred in admitting evidence of payments made in a new trial, the evidence could have been admitted in a post-remand proceeding for the purpose of determining the amount due the Bjerkens by the defendants Schultz & Lindsay Company and Ames Sand and Gravel Company, Inc., pursuant to the minimum requirement of the lease, without considering the payments made for the reject sand.

The evidence introduced consists of ledger entries, a group of cancelled checks starting with the year 1964, carbon copies of checks issued from December 30, 1957 through February 14, 1967, except for seven

such copies which were established by ledger entries, and adding machine tapes of the amounts set forth in the documents referred to showing that total payments made over the lease period equaled $264,740.23. An analysis of these exhibits reflects that the $264,740.23 is made up of several components. There were 111 payments of $2,083.33 covering the period from January 1958 through March 1967 for a total of $231,249.63. These payments were made in accordance with paragraph (8)(b) of the lease which reads:

> "Commencing January 1st, 1958, Lessee shall pay the sum of $2,083.33, and the further sum of $2,083.33 on the first of each and every month thereafter for the duration of this lease. Said payments shall cover one-twelfth of the annual minimum requirement of gravel to be removed from the premises. Payment for any amounts of gravel or material removed from the premises over and above the minimum requirements shall be made with the regular December payment."

In addition to these payments we find that there were three payments of $2,500 each for a total of $7,500, one of which is unexplained. We will, however, consider the unexplained payment as being applicable to the minimum payment requirement of the lease for the purpose of the following computation. The other two payments, for a total of $5,000, are explained and constitute payments required under paragraph (11) of the lease which provides:

> "The Lessee has deposited with the Lessors, the sum of $2,500.00 as a sign of good faith, which sum shall be applied as payment for the last gravel taken from the premises at the end of the term of this lease, or any renewal thereof. The Lessee, with the signing of the lease, will deposit with Lessors the sum of $2,500.00, which sum [shall] be applied as payment for the first gravel taken from the premises."

The sum of the above totals, to wit, $231,249.63 and $7,500, is $238,749.63 which it

appears is very close to the $239,339.84 which was stipulated as being paid under the minimum terms of the lease. However, as we held above, the stipulated amount governs.

In addition evidence was introduced of three additional payments, which are as follows:

| | | |
|---|---|---|
| June 5, 1959 | — | $ 6,146.40 |
| Feb. 20, 1961 | — | 17,205.70 |
| Jan. 30, 1962 | — | 2,637.43 |
| Total | — | $25,989.53 |

The only evidence in the record in explanation of these payments is that on the copy of check No. 1992 for $17,205.70, dated February 20, 1961, which notation states that it was in "Settlement for the year ending 12–31–60". The summary statement, to which we refer above, constitutes an accounting made by the defendants and given to the plaintiffs prior to the commencement of this action. It is noted that in the year 1960 material was removed in considerable excess of the annual minimum lease requirements. The last sentence of paragraph (8)(b), quoted above, provides:

> "Payment for any amounts of gravel or material removed from the premises over and above the minimum requirements shall be made with the regular December payment."

Further, we note that paragraph (8)(c) of the lease provides:

> "Any surplus stock pile of sand or aggregate remaining on said premises in an amount over and above the amount of material removed from said premises during the calendar year, and the amount of gravel, rock and stone stock piled on said premises as of December 31st of each year, the Lessee shall be charged therefor at the rate of 20¢ per cubic yard, and the accounting and payment therefor shall be made within sixty (60) days thereafter, provided, however, that when such surplus has been paid for

at the end of one year, and if the same surplus remains at the end of any other year, there shall be no requirement for the payment for such surplus as was on the premises on December 31st of the prior year."

It is therefore our belief that this settlement was made in accordance with the above provisions of the lease and is not applicable to the minimum requirement. Furthermore, the defendants made twelve monthly payments of $2,083.33 to the plaintiffs in 1960. Therefore the settlement could not have been in fulfillment of the minimum requirements but was for something over and above that amount.

We believe that the other two payments listed above, $6,146.47 in January 1959 and $2,637.43 in January 1962, are in the same category, although there are no notations contained on the copies of the checks explaining what these payments were for. We note, however, that in 1958 and also in 1961 the defendants made twelve payments of $2,083.33 to the plaintiffs under the minimum requirements of the lease. For this reason we can only conclude that these payments were also in settlement of overages, either for materials removed or for materials placed in stock piles, or both.

Although paragraph (12) of the lease permits the accumulation of minimums for removal at a later date, the lease does not provide for an accumulation of overages to be applied to later years, and furthermore it does not appear from the procedure followed by the parties over the term of the lease that overages were accumulated and applied to minimums required in later years. It is our conclusion that the parties, in their practice, properly construed the lease as written. It permitted that minimums could be accumulated for removal at a later date during the lease term but when more than the minimum amount of material was removed it should be paid for as an addition to the yearly minimum. Therefore such overages are not entitled to be credited against either the yearly mini-

mum payment requirement in the following year or the ten-year contract minimum.

We find, however, that reject sand was removed in each of the years in which the overage payments were made in the following year, and according to the summary statement $515.26 was paid for reject sand removed in 1958, $3,510.86 was paid for reject sand removed in 1960, and $33.34 was paid for reject sand removed in 1961. It is reasonable to conclude that these amounts were included in the overage payments.

According to the summary statement the value of the reject sand removed during the term of the lease, according to a special agreed upon price not provided for by the lease, was $6,442.37, of which $4,059.40 was included in the overage payments set forth above, leaving an unpaid balance for reject sand of $2,382.97. This amount must therefore be added to the minimum lease payment deficiency of $10,660.16, bringing the total for which the plaintiffs are entitled to judgment against these defendants to $13,043.13, plus interest at the legal rate from April 5, 1967, the termination date of the lease.

The judgment of the trial court is reversed and the case is remanded for the entry of judgment on remittitur in accordance with this opinion.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

ON PETITION FOR REHEARING

Ames Sand and Gravel Company, Inc., has petitioned for a rehearing, pointing out that this court's opinion did not resolve or discuss the issue of indemnity to Ames Sand and Gravel Company, Inc., from Schultz & Lindsay Construction Company.

In our opinion we directed the district court to enter a judgment on remittitur in favor of the plaintiffs and against the defendants, Schultz & Lindsay Construction

Company and Ames Sand and Gravel Company, Inc., in the amount of $13,043.13, plus interest. There is no challenge to the judgment on remittitur in this petition for rehearing. It appears that the petitioner, Ames Sand and Gravel Company, Inc., has reference to its cross claim contained in its separate answer and cross claim in which it cross-claimed against its coparty defendant, Schultz & Lindsay Construction Company, for "indemnity and/or contribution" should the plaintiffs, the Bjerkens, recover judgment against them.

It appears that in each of the two trials in the district court it entered judgment against the plaintiffs on the counterclaim of Schultz & Lindsay Construction Company, and dismissed the action against the defendant, Ames Sand and Gravel Company, Inc. Thus the trial court did not pass upon the cross-claim.

The lease upon which the Bjerkens sued was entered into by both of the defendants. However, on January 1, 1959, subsequent to the date of the lease of April 5, 1957, an "agreement" was entered into covering the lease and other matters between the respective defendants, subsidiary corporations of Schultz & Lindsay Construction Company, certain individuals, and the widow of a deceased corporate officer of one of the corporations. It also appears that the Bjerkens consented to the agreement by an instrument entitled "Consent to Assignment" but provided therein that nothing contained in the agreement would release or discharge Ames Sand and Gravel Company, Inc. or Schultz & Lindsay Construction Company from their liability as lessees under the lease of April 5, 1957. The business arrangement entered into and contained in the agreement of January 1, 1959, envisions a complicated business arrangement which cannot be determined by this court in the first instance upon the record in this case.

For the reasons set forth above, we modify our decision and direct that the trial court enter judgment on remittitur in favor of the plaintiffs and against the defendants, Ames Sand and Gravel Company, Inc., and Schultz & Lindsay Construction Company, in the amount of $13,043.13, plus interest at the legal rate from April 5, 1967, and also proceed to a trial of the issues involved as a result of the cross claim of the defendant, Ames Sand and Gravel Company, Inc., against Schultz & Lindsay Construction Company, and adjudicate the cross claim on its merits.

STRUTZ, C. J., and ERICKSTAD and PAULSON, JJ., concur.