**Ragnhild ECKRE, et al.,
Plaintiffs-Appellees,**

v.

**PUBLIC SERVICE COMMISSION of the State of North Dakota et al.,
Defendants-Appellants,**

**Dome Pipeline Corporation, Intervenor Defendant and Appellant.**

**Civ. No. 9225.**

Supreme Court of North Dakota.

Nov. 30, 1976.

Rehearing Denied Dec. 27, 1976.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for intervenor defendant and appellant; argued by William P. Pearce, Bismarck.

Thomas F. Kelsch, Sp. Asst. Atty. Gen., and Ray H. Walton, Commerce Counsel, North Dakota PSC, Bismarck, for defendants-appellants (Public Service Commission); argued by Mr. Kelsch.

Johnson, Milloy, Johnson, Stokes & Robinson, Ltd., Wahpeton, for plaintiffs-appellees; argued by Rauleigh D. Robinson, Wahpeton.

PAULSON, Judge.

This appeal is from the April 20, 1976, judgment of the district court of Burleigh County granting to the plaintiffs [hereinafter Landowners] a peremptory writ of mandamus compelling defendant Public Service Commission of the State of North Dakota [hereinafter the PSC] to withdraw, as improperly granted, the PSC's order in the matter of the application of intervenor-defendant Dome Pipeline Corporation [hereinafter Dome] for a certificate of public convenience and necessity granted May 1, 1972, for the construction and operation of a common carrier pipeline; and which certificate was amended on August 22, 1973, and on September 10, 1974. In addition, the judgment ordered the PSC to "begin anew" in the matter of the application of Dome for such certificate and to include a proper notice and afford an opportunity to be heard to interested parties, specifically including the Landowners herein; and the judgment further ordered the PSC to make new findings of fact, conclusions of law, and orders based solely upon evidence presented to the PSC. Both the PSC and Dome appeal from the judgment and the writ of mandamus.

The facts herein are not disputed. On February 11, 1972, Dome filed an application with the PSC wherein Dome requested the authority to construct and operate a pipeline and related facilities in the State of North Dakota. On February 18, 1972, the PSC sent notice of hearing to other public utilities in the area of the proposed pipeline, and to the chairman of the board of county

commissioners of each county traversed by said pipeline. Also, on February 18, 1972, the PSC forwarded a copy of the notice of hearing in the form of a general news release to the official county newspaper of each county affected by said pipeline, but did not request such notice to be published as a legal publication in any of such newspapers. On March 16, 1972, a hearing on the application of Dome for a certificate of public convenience and necessity for the construction and operation of a common carrier pipeline was held before the PSC at Bismarck. On May 1, 1972, the PSC issued a certificate of public convenience and necessity to Dome, subject, among other conditions, to the following: (1) that the applicant begin construction not later than September of 1973; and (2) that the pipeline be constructed along the basic route outlined by exhibits filed at the March 16, 1972, hearing. The initial certificate authorized Dome to construct a single 16-inch pipeline.

On July 27, 1973, Dome filed a petition with the PSC advising the PSC that Dome could not meet the requirements of PSC's order insofar as commencing construction of the proposed pipeline before September of 1973, and indicated that the pipeline would now consist of two parallel lines, one of them 10 inches in diameter and the other one 12 inches in diameter, rather than the originally proposed single 16-inch line. Accordingly, the PSC, without notice or hearing, issued an amended order dated August 22, 1973, wherein the PSC authorized construction and operation of the common carrier pipeline in accordance with Dome's petition of July 27, 1973, and ordered that construction begin not later than September of 1974.

On September 6, 1974, Dome filed another petition with the PSC wherein Dome requested further extension of its certificate of public convenience and necessity to permit Dome to commence construction of the proposed pipeline no later than August 31, 1975. In accordance with such request, the PSC, on September 10, 1974, issued another amended order, approving Dome's request of September 6, 1974.

The Landowners herein were never served with notice or other process, nor did they have actual notice of the initial hearing before the PSC held on March 16, 1972; nor did the Landowners receive notice prior to the issuance of the PSC's respective amended orders of August 22, 1973, and September 10, 1974.

The Landowners, having been contacted by representatives of Dome and having refused to negotiate the sale of their property to Dome, are all defendants in eminent domain cases now pending in the district courts of Ransom and Richland Counties.

On January 6, 1976, the Landowners filed a petition for a writ of mandamus with the district court of Burleigh County, seeking to compel the PSC to withdraw the certificate of public convenience and necessity previously granted to Dome; to require the PSC to rehear Dome's application, giving adequate notice to and affording opportunity for interested parties to be heard; and, thereafter, to issue new findings of fact, conclusions of law, and orders based upon evidence to be adduced at the new hearing. The PSC resisted the Landowners' petition, and Dome, as an intervenor, joined with the PSC. The district court entered its judgment and granted the writ of mandamus dated April 20, 1976, ordering the PSC "to begin anew". Both the PSC and Dome perfected timely appeals from the judgment and the writ of mandamus to this court.

In order to determine whether the writ of mandamus was properly issued in the instant case, this court must affirmatively find: (1) that the Burleigh County District Court had jurisdiction to hear the Landowners' petition for a writ of mandamus; (2) that the Landowners are proper parties to challenge the granting of a certificate of public convenience and necessity to a common pipeline carrier project; (3) that a common pipeline carrier is required to obtain a certificate of public convenience prior to the construction or operation of a pipeline; (4) that there was a legal duty to give notice to the landowners within the projected pipeline right-of-way prior to the PSC

hearing on Dome's application for a certificate of public convenience and necessity; and (5) that mandamus was an appropriate remedy to compel such notice.

## I.

■ Both Dome and the PSC contend that, since eminent domain proceedings were initiated in the district courts of Ransom and Richland Counties prior to the commencement of this action in Burleigh County District Court, the Burleigh County District Court was without jurisdiction to hear the Landowners' petition for a writ of mandamus. We find no merit in this contention.

■ Questioning the propriety of the issuance of a certificate of public convenience and necessity by the PSC would have been improper in any district court other than in the district court of the county in which the hearing was held on Dome's application for a certificate of public convenience and necessity. Section 49–05–12, N.D.C.C., provides that an appeal from proceedings of the PSC shall be taken in the manner prescribed by Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act. Section 28–32–15, N.D.C.C., of such Act, in pertinent part, states:

" . . . Such appeal may be taken to the district court designated by law, and if none is designated, then to the district court of the county wherein the hearing or a part thereof was held. . . . "

In the instant case, the hearing on Dome's application for a certificate of public convenience and necessity was held in Burleigh County—thus the Burleigh County District Court was the *only* district court with jurisdiction to hear the instant case.

## II.

Both the PSC and Dome question the Landowners' standing to challenge the PSC's issuance of a certificate of public convenience and necessity. This court has recently examined the use of the principle of standing to obstruct judicial review of administrative agency action, in *Citizens State Bank of Neche v. Bank of Hamilton,* 238 N.W.2d 655, 658 (N.D.1976), wherein we stated:

"We recognize a sharp distinction between an administrative agency's appearance to explain or defend its decision and its appearance challenging the standing of those seeking a review of its decision. The former sometimes is unavoidable or even necessary and frequently serves a useful purpose by bringing to the attention of the appellate court some of the expertise and considerations involved in arriving at the decision; whereas the latter is a deliberate effort to prevent a judicial review of the agency's decision."

■ Section 32–34–02, N.D.C.C., requires that a writ of mandamus be issued upon the application of a "party beneficially interested". Such beneficial interest must be presently existing, and except in cases in which a party's interest as a taxpayer is sufficient, it must be substantial, real, and actual, different from and transcending those interests of the citizens generally. 52 Am. Jur.2d Mandamus § 388; 55 C.J.S. Mandamus § 47.

■ In the instant case, the Landowners allege that the PSC's approval of Dome's application for a certificate of public convenience and necessity without the Landowners' participation caused injury to their beneficial interests by not allowing said Landowners to protect their beneficial interests in the manner of construction of the pipeline, the safety practices to be followed, the products to be conveyed, the frequency of service, and the discovery of potential hazards to the public health and safety. We find such interests to be substantial, real, actual, and personal to the Landowners herein, thus granting the Landowners legal standing to challenge by mandamus the scope and form of notice used by the PSC for its hearing on Dome's application for a certificate of public convenience and necessity.

## III.

■ Dome asserts that because it is a "common pipeline carrier" it is not required

to apply for or receive a certificate of public convenience and necessity prior to Dome's construction or operation of its proposed pipeline. Dome argues that since it is a "common carrier" as defined in § 49–19–01(4), N.D.C.C., the authority to construct and maintain a pipeline is derived exclusively from the filing of an acceptance of the provisions of Chapter 49–19, N.D.C.C., by Dome. Section 49–19–12, N.D.C.C., provides:

> "When pipeline carrier may exercise right of eminent domain.—Every common pipeline càrrier which shall have filed with the commission its acceptance of the provisions of this chapter shall have the right and power of eminent domain in the exercise of which it may enter upon and condemn the land, right of way, easements, and property of any person necessary for the construction, maintenance, or authorization of its pipeline. The manner and method of such condemnation, and the assessment and payment of the damages therefor shall be the same as is provided by law in the case of railroads. The right of eminent domain and the right to use public lands, highways, or roads for right of way for pipelines shall be acquired *only* by compliance with the provisions of this chapter."
> [Emphasis added.]

Dome argues that the use of the word "only" in § 49–19–12, N.D.C.C., implies that compliance with the provisions of Chapter 49–19, N.D.C.C., is the sole statutory requirement which must be met by Dome in order to proceed with the construction and operation of its proposed pipeline. We find Dome's contention unpersuasive. We interpret the last sentence of § 49–19–12, N.D.C.C., to mean that the power of eminent domain granted to common pipeline carriers is conditioned upon compliance with the provisions of Chapter 49–19, N.D.C.C., and does not mean that acceptance of the provisions of Chapter 49–19 is the only condition precedent placed upon a common pipeline carrier's acquisition and use of the power of eminent domain. A common pipeline carrier does not acquire the power of eminent domain solely through acceptance of the provisions of Chapter 49–19, N.D.C.C., but acquires the power of eminent domain through compliance with all of the pertinent constitutional and statutory prerequisites. We find from a review of the provisions of Chapters 32–15, 49–03, and 49–22, N.D.C.C., that each of such chapters contains conditions precedent which must be complied with prior to the exercise of the right of eminent domain by a common pipeline carrier.

 Further, we find the provisions of Chapter 49–03, N.D.C.C., to be specifically applicable to common pipeline carriers. Section 49–03–01, N.D.C.C., provides, in pertinent part:

> "Certificate of public convenience and necessity—Secured by public utility.—No public utility henceforth shall begin in the construction or operation of a public utility plant or system or extension thereof, without first obtaining from the commission a certificate that public convenience and necessity require or will require such cónstruction and operation. . . ."

Section 49–01–01(3), N.D.C.C., provides:

> "Definitions.—In this title, unless the context or subject matter otherwise requires:
>
> . . . . .
>
> "3. 'Public utility' shall include any association, person, firm, corporation, or agency engaged or employed in any business enumerated in this title;"

Common pipeline carriers are a "business enumerated in" Title 49, N.D.C.C., and, as such, are subject to the requirements of § 49–03–01, N.D.C.C., and, therefore, must apply for and receive a certificate of public convenience and necessity prior to the construction or operation of a pipeline system.

IV.

The Landowners contend that there was a legal duty to give notice to the landowners within the projected pipeline right-of-way corridor prior to the PSC hearing on Dome's application for a certificate of public convenience and necessity. Specifically,

the Landowners allege in paragraph III of their petition for writ of mandamus:

"That it was the duty of the defendants to adopt rules and regulations in the conducting of hearings before · said defendant, Public Service Commission, which would not result in a denial of due process of law, including forms of notice and the service thereof, which would conform as nearly as possible to those in use in the courts of this state; and that the notice which preceded the hearing which ultimately resulted in the issuance by the defendant [PSC] of the certificate of public convenience and necessity herein in issue was so fundamentally deficient vis-a-vis these plaintiffs [Landowners] that they have been denied due process of law."

Section 49–03–02, N.D.C.C., provides for a hearing, after notice "as provided in this title [Title 49, Public Utilities, N.D.C.C.], on applications for issuance of a certificate of public convenience and necessity. A perusal of Title 49, N.D.C.C., reveals two provisions specifying guidelines for giving "notice" in proceedings such as have been initiated here. Section 49–01–07, N.D.C.C., provides, in pertinent part:

"*Proceedings of public service commission.*—The commission in all cases may conduct its proceedings, when not otherwise particularly prescribed by law, in a manner most conducive to the proper dispatch of business and to the ends of justice. . . . The commission from time to time may make or amend such general rules or orders as may be requisite for the orderly regulation of proceedings before it, including forms of notice and the service thereof, which shall conform as nearly as possible to those in use in the courts of this state. . . . "

It is to be noted that § 49–01–07, only prescribes that the "forms" of notice and the method of service thereof shall conform as nearly as possible to those in use in the courts of this State. The determination of who is entitled to receive such notice is left to the discretion of the PSC so long as it is "in a manner most conducive to the proper

dispatch of business and to the ends of justice".

Section 49–02–02, N.D.C.C. [S.L. 1953, ch. 283, § 1], the applicable statute in force and effect at the time this cause of action arose, provided, in pertinent part:

"*Powers of public service commission with reference to public utilities.*—The commission shall have power

. . . . .

"5. To shorten the period for which notice shall be given prior to hearing, when good cause exists for such action. Such notice, however, shall be reasonable in view of the nature, scope, and importance of the hearing . . . ."

The Legislature has thus delegated to the PSC a discretionary power to promulgate such rules and issue such orders to govern the method and scope of notice which may be necessary for the orderly regulation of proceedings before the PSC, so long as the forms of such notice "conform as nearly as possible to those in use in the courts of this state", and that such notice is "reasonable in view of the nature, scope, and importance of the hearing". The PSC's method of giving notice in the instant case will be reversed only by a finding of this court that such method of giving notice was in "clear abuse of discretion", i. e., failing to be in a manner conducive to the proper dispatch of business and to the ends of justice, and failing to provide notice that was "reasonable in view of the nature, scope, and importance of the hearing". §§ 49–01–07, 49–02–02, N.D.C.C.; *State ex rel. Northern Pac. Transport Co. v. Public Service Commission,* 82 N.W.2d 597 (N.D.1957).

A hearing on an application for a certificate of public convenience and necessity is an administrative proceeding of limited scope. Such a hearing is to determine whether or not the prerequisites to the construction, operation, or extension of a plant or system by a public utility are present in order that the public interest may be safeguarded in the interests of public convenience and necessity. Proper areas of consideration before the PSC at such

hearing include: (1) whether the proposed service is reasonably necessary or would be wasteful and a useless burden on the public; (2) whether it would cause economic waste or public disadvantage; (3) whether it would cause unnecessary duplication of facilities which, in turn, might jeopardize presently existing facilities of the same type in the area where the proposed facility is to be located and which could ultimately result in inadequate services and higher rates; and (4) whether or not an applicant has the ability to finance its proposed service and is a fit, willing, and able party to perform the services proposed in conformance with the laws of the State and the rules and regulations of the PSC.

In the instant case, in addition to posting notice of hearing in the PSC office, the PSC sent notice of hearing to competing public utilities and to the respective chairmen of the boards of county commissioners of the counties wherein resided citizens who would be affected by the construction or operation of the proposed pipeline. In addition, the PSC sent, as a general news release, a copy of such legal notice of hearing to the official newspaper of each county wherein resided citizens who would be affected by the construction or operation of the proposed pipeline.

Even though we find such notice was not the most effective method of giving notice to members of the public with private or public interests in the approval of Dome's application for a certificate of public convenience and necessity, we find that it was not unreasonable in the instant case, given the nature, scope, and importance of the hearing.[1] The landowners within the proposed pipeline corridor are not entitled to a judicial hearing on the legislative question of public convenience and necessity, but, rather, are limited to the type of hearing and determination afforded by statute. *Mountrail County v. Wilson,* 27 N.D. 277, 291, 146 N.W. 531, 535 (1914); 1 Nichols on Eminent Domain § 4.11[3]; 29A C.J.S. Eminent Domain §§ 89(3), 90. We cannot conclude that the landowners' interests which are within the scope of such hearing were not adequately protected by actual notice to the landowners' locally elected representatives—the county board of commissioners, and by the PSC commissioners as representatives of the public interest at such proceedings. We find that such notice is not in clear abuse of the discretion delegated to the PSC to govern the method and scope of notice necessary for the orderly regulation of its proceedings.

## V.

Last, we reach the question of whether or not mandamus was an appropriate remedy in the instant case. This court will not reverse a trial court's issuance or denial of a writ of mandamus unless, as a

---

1. In addition to the PSC hearing on Dome's application for a certificate of public convenience and necessity, landowners within the proposed pipeline corridor will be given two additional opportunities to represent their interests. First, the Energy Conversion and Transmission Facility Siting Act, Ch. 49–22, N.D.C.C., requires that Dome apply for and receive a certificate of site compatibility prior to its exercise of the right of eminent domain in connection with the construction of its pipeline. The Siting Act prescribes a system of public hearings and PSC study and evaluation by which a suitable corridor for the project is proposed and approved; and then, after additional public hearings and PSC study and evaluation, a specific transmission facility route within such corridor is proposed and approved. Such procedure is to insure that energy transmission facilities are developed in an orderly manner compatible with environmental preservation and efficient use of resources. Sec. 49–22–09, N.D.C.C., sets forth the factors to be considered in the evaluation of applications and designation of sites and corridors.

Second, the landowners within the specific transmission facility route will be given personal notice of and made parties to an eminent domain action. At such judicial proceedings, landowner interests which are properly the subject of judicial determination will be considered, including: an assessment of damages; a determination that the use to which the property is to be applied is a use authorized by law; that the taking is necessary; and, if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use. Secs. 32–15–05 and 32–15–22, N.D.C.C.

matter of law, such writ should not issue unless there is a finding that the court has abused its discretion. *Fargo Ed. Ass'n v. Paulsen*, 239 N.W.2d 842, 849 (N.D.1976), and cases cited.

Section 32-34-01, N.D.C.C., provides, in pertinent part:

"*By and to whom writ of mandamus issued.*—The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of *an act which the law specially enjoins as a duty* resulting from an office, trust, or station . . . ." [Emphasis added.]

In *Fargo E. Ass'n v. Paulsen, supra* 239 N.W.2d at 843, in paragraph 1 of the syllabus, we stated:

"1. The prerequisites to the issuance of a writ of mandamus are that the petitioner must show that he has no plain, speedy, and adequate remedy in the ordinary course of the law and *that he has a clear legal right to the performance of the particular act sought to be compelled by the writ.*" [Emphasis added.]

A petitioner for a writ of mandamus must have a clear legal right to the relief sought.

■ In the instant case, we have found that the decision as to whether or not to issue notice to the landowners herein is a *discretionary act* and, as such, is not specially enjoined by law. Further, we conclude that the PSC acted properly in the exercise of such discretion. Because the Landowners herein have no clear right to the relief they seek, we find that a writ of mandamus should not have been issued as a matter of law. § 32-34-01, N.D.C.C.; *Fargo Ed. Ass'n v. Paulsen, supra*, 239 N.W.2d at 845; 52 Am.Jur.2d Mandamus § 35; and 55 C.J.S. Mandamus § 63.

■ Without discussing in detail the concurring and dissenting opinion filed in this case, we make these observations: (1) the only portion of Dome's proposed pipeline that has been constructed in North Dakota is a short segment installed at the site of the international border crossing in Renville County; (2) the question of public necessity is a legislative question that has been delegated to the PSC by the Legislature in common pipeline carrier cases, and such public necessity need only be affirmatively established in subsequent eminent domain proceedings to comply with the provisions of § 32-15-05(2), N.D.C.C.; and (3) the cases cited therein are not germane to the proceedings in the instant case and are distinguishable on the facts, covering, as they do, such subjects as: criminal law, child custody proceedings, the constitutional right to have access to the courts to obtain a divorce, and the constitutional right to prior notice and hearing on official governmental action which would place a person in jeopardy of serious personal loss—i. e., being labeled a Communist in 1950.

For the reasons stated herein, the judgment of the district court is reversed and the peremptory writ of mandamus issued pursuant thereto is ordered vacated.

ERICKSTAD, C. J., and PEDERSON, J., concur.

VOGEL, Justice, concurring in part and dissenting in part.

We concur in the result, but only because compliance with the Energy Conversion and Transmission Facility Siting Act, Chapter 49-22, North Dakota Century Code, may supply the due process we believe to be otherwise lacking in the notice given to the landowners involved in this case. We understand the majority opinion as requiring compliance with the Act.

Dome's pipeline project was the subject of years of planning and preparation. On July 27, 1973, it was sufficiently definite so that an application for a certificate of public convenience and necessity could be made. No notice was given to the landowners whose land was to be subjected to an easement for the pipeline. Notice was given to one county commissioner in each county to be crossed by the line, to one newspaper in each county, and to all potential competitors of Dome. But no notice was given to those whose lands would be perpetually burdened by the taking, and the notice to the newspapers was submitted as

a news item, not as a paid advertisement. There is no proof that any of the newspapers published the news item, and there is proof that some did not.

Similarly, the landowners were given no notice of the amended order of August 22, 1973, or the petition for amendment of September 6, 1974, or the amended order of September 10, 1974, or any other part of the proceedings.

In fact, it is stipulated that all of the landowners would testify, as one of them did, that they had no notice at all of the plan to take easements across their lands until they were called on by an easement negotiator on August 12, 1975, more than two years after the Public Service Commission received the application for the certificate of public convenience and necessity.

By the time the landowners received notice from the negotiator, Dome had already obtained its certificate of public convenience and necessity and amended it twice, it had built some miles of line in the State, it had negotiated easements from a substantial number of landowners, and it had expended a large sum of money. We are told that some of the easements already obtained were located on both sides of the lands of these appellants.

Dome now asserts that there is no statutory or constitutional requirement of notice to these landowners, since they have the statutory right to contest the necessity of the taking of the land when eminent-domain proceedings are instituted. This argument is based upon the language of an eminent-domain statute, Section 32–15–05, N.D.C.C., which provides, in part:

"Before property can be taken it must appear:
"1. That the use to which it is to be applied is a use authorized by law.
"2. That the taking is necessary to such use."

In the ordinary case, it seems to us, this provision affords a defendant sufficient opportunity to contest the necessity of the taking. But in a case such as the one now before us, where a certificate of public con-

venience and necessity has already been obtained from the Public Service Commission, the fact of the matter is that necessity has already been irretrievably adjudicated.

Section 49–03–01, N.D.C.C., provides, in part:

"No public utility henceforth shall begin in the construction or operation of a public utility plant or system or extension thereof, without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction and operation."

In the case before us, the certificate of public convenience and necessity had been obtained, and presumably hundreds of easements had been obtained and possibly millions of dollars expended on the project before the landowners involved in this action ever heard of the project. Under these circumstances, we believe it is a mockery of reality to say that these landowners have any meaningful opportunity to contest the necessity of the taking of an easement on their lands. That necessity had already been determined before they heard of the project.

If it were not for the Siting Act, *supra,* we would dissent in this case on the ground that procedural due process had been violated. However, we are advised that the Public Service Commission has ordered Dome to comply with the Siting Act. That Act requires more and better notice than was given here, but does not require service of notice directly upon affected landowners. Whether such service complies with due process we cannot decide on the record before us. The sufficiency of such notice was neither briefed nor argued in this case. It may be sufficient. In the hope that it will be, we concur in the result in this case.

If the notice required by the Siting Act is not sufficient, Dome should be required to start over and the trial court should be free to reinstate its order to the Public Service Commission to hold new hearings.

It is our view, put very simply, that when the necessity of the taking of land, or easements across land, is for all practical purposes determined in a hearing on an appli-

cation for a certificate of public convenience and necessity, procedural due process requires notice to the affected landowners and an opportunity to present evidence on the necessity of the taking. We would further hold that a determination of public convenience and necessity by the Public Service Commission makes ineffectual the notice and opportunity to contest the necessity of the taking of property under the eminent-domain statutes because the necessity of such taking has already been determined by the Public Service Commission.

Notice of the issues involved in a hearing and an opportunity to defend are implicit in the concept of due process. *In re M. L.,* 239 N.W.2d 289 (N.D.1976); *McGuire v. Warden,* 229 N.W.2d 211 (N.D.1975).

In the case of "a person in jeopardy of serious loss," he must be given "notice of the case against him and opportunity to meet it." Frankfurter, *concurring,* in *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 171, 71 S.Ct. 624, 649, 95 L.Ed. 817, 854 (1950).

"Prior cases establish, first, that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut,* 401 U.S. 371, 376, 91 S.Ct. 780, 785, 28 L.Ed.2d 113, 118 (1971).

" . . . What the Constitution does require is 'an *opportunity* * * * granted at a meaningful time and in a meaningful manner,' [citation omitted] (emphasis added), 'for [a] hearing appropriate to the nature of the case,' [citation omitted]." *Boddie v. Connecticut, supra,* 401 U.S. 371, 377, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119.

SAND, J., concurs.