NORTHERN STATES POWER COMPANY, Appellant,

v.

NORTH DAKOTA PUBLIC SERVICE COMMISSION and Cass County Electric Cooperative, Inc., Appellees.

Civ. No. 890250.

Supreme Court of North Dakota.

March 1, 1990.

---

R.W. Wheeler of Wheeler Wolf, Bismarck, for appellant.

John D. Kelly of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for appellee Cass County Elec. Co-op.

Illona Jeffcoat–Sacco, Asst. Atty. Gen., Bismarck, for appellee Public Service Com'n.

VANDE WALLE, Justice.

Northern States Power Company (NSP) appealed from an order of the Public Service Commission (PSC) which found that NSP's extension of electrical service into three subdivisions of Fargo, North Dakota, constituted an unreasonable duplication of investment, facilities, and services already provided by Cass County Electric Cooperative (Cass). We affirm.

NSP is a Minnesota corporation which provides electric and natural gas service to areas in eastern North Dakota. Since 1937, NSP has been authorized by the PSC to provide electric service as an electric utility to the city of Fargo. Cass is an electric cooperative corporation organized under the laws of North Dakota. Cass provides electric service in Cass County, as well as several other counties in the state.

Prior to 1975, NSP and Cass entered into a "territorial agreement" which was designed to avoid wasteful duplication of electric facilities in and around the city of Fargo. Under this agreement, Cass was designated to serve Barnes Township. Barnes Township contains the three subdivisions of Fargo in controversy. Due to legal considerations, NSP and Cass abandoned the "territorial agreement" in 1975 and pursued other avenues of avoiding wasteful duplication. As a part of this effort, Cass and the city of Fargo entered into an agreement on October 28, 1975, which gave Cass a nonexclusive right-of-way for its facilities in areas served by Cass and subsequently annexed by the city. Under the terms of this agreement, any area served by Cass which was annexed to the city of Fargo would remain Cass's service area absent an objection by the city or another electric supplier. Objections were required to be filed within thirty days after Cass gave notice of the annexations to the city and other electric suppliers.

In 1978, the city of Fargo annexed a large area served by Cass west of U.S. Highway 81, and south of 32nd Avenue South. The annexed area includes the subdivisions in issue which are known as the South Pointe 1st, 2nd, and 3rd Additions (South Pointe). The South Pointe subdivisions directly abut the southern side of 32nd Avenue South.

Shortly after the 1978 annexation, Cass notified Fargo and NSP, pursuant to the 1975 agreement, that it would supply the annexed area with electricity. NSP filed no objection and, by its terms, the nonexclusive right-of-way agreement incorporated the annexed area. Cass had included the entire annexed area in its long-range plans and made large investments in facilities to serve that area. Prior to October of 1986, Cass was the only supplier of electricity in the annexed territory.

In August of 1986, the developer of South Pointe negotiated with NSP and Cass concerning electric service for the subdivisions. The developer eventually entered into an agreement with NSP in which NSP would supply both electric and natural gas services to South Pointe. In 1977, NSP had constructed a three-phase distribution line in its service area on the north side of 32nd Avenue South. NSP planned

to tap into this distribution line and extend it across 32nd Avenue South to provide electric service to the South Pointe subdivisions. In accordance with its long-range plans for the annexed territory, Cass had also installed an underground three-phase distribution line in 1981. Cass's distribution line ran along the south side of 32nd Avenue South, and was capable of serving the South Pointe Additions.

This case was commenced on September 16, 1986, when Cass filed a complaint with the PSC under the provisions of the Territorial Integrity Act. *See* NDCC chapter 49–03. The complaint alleged that NSP's extension of electric lines into South Pointe unreasonably interfered with Cass's electric services, facilities and system that were in place, and would therefore result in a wasteful duplication of "investment in plant facilities and services." Cass sought an order to enjoin NSP from extending its system into South Pointe. *See* NDCC § 49–03–01.4.

A hearing was subsequently held before the PSC. Under NDCC § 49–03–01.3, an electric public utility is not required to obtain a certificate of public convenience and necessity to extend its electric distribution lines inside the corporate limits of a municipality within which it operates, provided "that such extension or extensions shall not interfere with existing services provided by a rural electric cooperative...." Because Cass was not actually providing electric service to any customers within the South Pointe subdivisions at that time, the PSC concluded that NSP's extension of its electric system did not interfere with the "existing" electric service of Cass. Consequently, the PSC dismissed Cass's complaint. The PSC's decision was eventually appealed to this Court.

In *Cass County Elec. Co-op v. N.S.P.*, 419 N.W.2d 181, 184–85 (N.D.1988), we noted that the "primary purpose of the [Territorial Integrity] Act was to keep to a minimum wasteful duplication of capital-intensive utility services and conflicts between suppliers of electricity." In light of this purpose, we concluded that the PSC interpreted § 49–03–01.3 too narrowly, and that

the PSC must look at the existing facilities that Cass and NSP had in place in the entire surrounding area to "determine whether the extension of NSP's services into South Pointe would constitute an unreasonable duplication of capital-intensive facilities and services already provided by Cass." *Id.* at 187. Accordingly, the PSC's order was set aside, and the case was remanded to the PSC for further proceedings in accordance with our opinion.

A second hearing on Cass's complaint was held before the PSC. At the end of the hearings, the PSC issued its "Findings of Fact, Conclusions of Law, and Order" directing NSP to cease and desist from providing electric service to the three South Pointe subdivisions. The PSC concluded that "NSP's extension of electric service across 32nd Avenue South into the South Pointe Additions interferes with and would constitute an unreasonable duplication of investment and available facilities and services provided by Cass." NSP appealed.

On appeal, NSP contends that: (1) the PSC's findings of fact were not supported by the evidence, (2) the PSC's conclusions of law were not supported by the findings of fact, and (3) the decision of the PSC was contrary to law.

■ An appeal from a decision of the PSC is governed by the provisions of the Administrative Agencies Practice Act [NDCC chapter 28–32]. *See Cass County Elec. Co-op. v. N.S.P., supra; Montana–Dakota Util. Co. v. P.S.C.*, 413 N.W.2d 308 (N.D.1987); *Triangle Oilfield Services, Inc. v. Hagen*, 373 N.W.2d 413 (N.D.1985); *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979); *Application of Northern States Power Company*, 171 N.W.2d 751 (N.D.1969). NSP's allegations of error parallel our scope of review of administrative agency decisions as defined by NDCC § 28–32–19. That section requires us to affirm the decision of the agency unless we find that:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact."

NSP's first two arguments are grounded upon subsections (5) and (6) of § 28–32–19. The standards we use to determine whether agency findings are supported by the evidence, and whether agency conclusions are supported by the findings, have been summarized as follows:

"1. We do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence.

"2. We exercise restraint when we review administrative agency findings.

"3. It is not the function of the judiciary to act as a super board when reviewing administrative agency determinations.

"4. We will not substitute our judgment for that of the qualified experts in the administrative agencies."

*Montana–Dakota Util. Co. v. P.S.C.,* 413 N.W.2d at 310. *See also Berdahl v. N.D. State Personnel Bd.,* 447 N.W.2d 300 (N.D. 1989); *Skjefte v. Job Service North Dakota,* 392 N.W.2d 815 (N.D.1986); *Blueshield v. Job Service North Dakota,* 392 N.W.2d 70 (N.D.1986); *Triangle Oilfield Services, Inc. v. Hagen, supra.* With these standards in mind, we review the findings of fact and conclusions of law entered by the PSC.

■ The PSC entered numerous findings of fact which, briefly summarized, reveal

that Cass was designated to serve the areas in controversy under the abandoned "territorial agreement"; that under the nonexclusive right-of-way agreement with the city of Fargo, any area served by Cass which was annexed by the city would remain Cass's service area absent an objection by the city of Fargo or NSP; that the areas in controversy were annexed by the city in 1978; that prior to October of 1986, Cass was the only supplier of electricity in the annexed area; that Cass had included the area in controversy in its long-term plans and had made investments of approximately $2,235,593 in the construction of facilities and other electrical systems to serve the territory; that NSP has a three-phase distribution line on the north side of 32nd Avenue South; that NSP proposed to serve South Pointe by extending a line from its distribution system into the subdivision; that Cass has a three-phase distribution line on the southern side of 32nd Avenue South capable of serving the annexed subdivision; that the subdivision developer preferred NSP to provide electrical service to South Pointe; that both Cass and NSP are reliable suppliers of electricity; that Cass would best be able to serve the South Pointe subdivisions due to its extensive plant, facilities, and system in the annexed area; and that service by Cass would best promote the orderly development of electric service in the entire annexed area. From these findings of fact, the PSC concluded that "NSP's extension of electric service across 32nd Avenue South into the South Pointe Addition interferes with and would constitute an unreasonable duplication of investment and available facilities and services provided by Cass."

At the hearings conducted before the PSC, Cass entered into evidence a variety of documents and testimony which adequately support the PSC's findings. In addition to the abandoned "territorial agreement" and the nonexclusive right-of-way agreement,[1] Cass entered into evi-

1. Our decision does not imply that NSP, who was not a party to the nonexclusive right-of-way agreement, is estopped from raising the issue of duplication now because it did not protest in

1978. Nevertheless, the fact NSP waited until 1986 to raise the issue, after Cass had installed its three-phase distribution line in 1981, is one

dence annexation plats from the city of Fargo to demonstrate the annexation of areas which had been served by Cass. Cass also entered into evidence exhibits and testimony regarding its long-term plans for the annexed area, and the current implementation of those plans. The exhibits demonstrated that Cass had constructed 35.29 circuit miles of electrical lines, 13 line switches, and 263 transformers in the territory. The testimony also indicated that Cass had spent well over two million dollars in the construction of facilities to serve the entire annexation, that Cass was supplying electric service to a number of accounts throughout the annexed area, and that NSP had supplied no electric service in the annexed territory prior to the time it extended its lines into South Pointe in October of 1986. There was also testimony by a witness for NSP that Cass was a reliable electric supplier. Furthermore, Fargo-area service reliability indexes were entered into evidence by Cass to demonstrate that it is a reliable supplier of electricity.

We believe, upon reviewing the evidence in the record, that a reasoning mind could have reasonably determined that the factual findings entered by the PSC were supported by the weight of the evidence, and that the PSC's conclusions were supported by the findings. In short, the voluminous testimony and numerous exhibits presented at the hearings contained substantial evidence to support the PSC's findings and conclusions that Cass had an extensive system in place for the annexed territory, and that NSP's extension of electric service into South Pointe would constitute an unreasonable duplication of the facilities and services provided by Cass in the area.

NSP's final argument is that the PSC's decision was not in accordance with the law. *See* NDCC § 28–32–19(1). The crux of NSP's argument is that the PSC's order violates the Territorial Integrity Act's primary purpose of "keep[ing] to a minimum wasteful duplication of capital-intensive utility services and conflicts between suppliers of electricity." *Cass County Elec. Co-op v. N.S.P.*, 419 N.W.2d at 184–85.

of the many facts the PSC was entitled to con-

*See also, Cass Cty. Elec. Coop. v. Wold Properties, Inc.*, 249 N.W.2d 514, 19 P.U. R.4th 341 (N.D.1976). NSP notes that its three-phase distribution line on the north side of 32nd Avenue South, which it tapped to provide electricity to South Pointe, was constructed in 1977. Because Cass installed its underground three-phase distribution line on the south side of 32nd Avenue South in 1981, NSP claims that it is the installation of Cass's line which is actually wasteful.

While NSP correctly states the purpose of the Territorial Integrity Act, the Act's implementing statutes do not necessarily guarantee the accomplishment of that purpose. Under our statutory scheme, electric public utilities must, with few exceptions, secure a certificate of public convenience and necessity from the PSC in order to extend their electric distribution facilities. *See* NDCC §§ 49–03–01 through 49–03–01.3; *Tri–County Electric Cooperative, Inc. v. Elkin*, 224 N.W.2d 785 (N.D. 1974). On the other hand, electric cooperatives are largely unregulated in the sense that they have the ability to expand their electrical services without having to first obtain a certificate of public convenience and necessity. *See Tri–County Electric Cooperative, Inc. v. Elkin, supra* [certificates of convenience are not required for extensions by electric cooperatives]; *Application of Montana–Dakota Utilities Co.*, 219 N.W.2d 174, 180 (N.D.1974) [noting that extensions of electric distribution facilities by electric cooperatives are not regulated by the PSC because the Legislature determined that members of the cooperative, who own and control the business, would adequately protect their own economic investment and interest by preventing unwarranted wasteful expansion]. Thus, in light of the current regulatory situation, it may not always be possible to prevent some of the actual duplication of distribution facilities which may occur in practice when cooperatives extend their existing electrical systems. The instant case may be indicative of the imperfections which endure in a comprehensive regula-

sider in reaching its decision.

tory scheme and the problems which can develop thereunder.

■ However, when a complaint is filed under the provisions of the Territorial Integrity Act, we believe that the question of "which electric suppliers' facilities are actually duplicative or wasteful" is one of fact for the PSC to determine. Indeed, our remand in *Cass County Elec. Co-op. v. N.S.P.*, *supra*, required the PSC to make that factual determination with regard to the South Pointe electrical facilities. The PSC's subsequent findings and conclusions were that NSP's extension into South Pointe was a duplication of Cass's available facilities in the entire annexation. Moreover, the findings entered by the PSC demonstrate that it considered NSP's arguments regarding the distribution lines along 32nd Avenue South when it entered its decision concerning wasteful duplication in the annexed area. We believe that NSP's third argument concerning the PSC's order is, in reality, a thinly veiled attempt to have this Court reweigh and reevaluate the evidence regarding wasteful duplication which was presented to the PSC during its hearings. Accordingly, we are unwilling to function as a "super board" and second-guess the PSC's determinations.[2] *Montana–Dakota Util. Co. v. P.S.C.*, *supra*.

The order of the PSC is affirmed.

ERICKSTAD, C.J., MESCHKE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

[2.] Indeed, it appears NSP's argument is that, although it is too late to avoid duplication of service and conflict between suppliers of electricity in the instant case, this Court should nevertheless reverse and thus require Cass to divest itself of its properties in South Pointe in order that our decision serve as an example to future suppliers of electricity who would expand their operations under similar circumstances. But, if an example is to be established, that is, under the separation of powers doctrine, uniquely a function of the PSC. *See also* 73B C.J.S. *Public Utilities* § 69(c) (1983) [extent of service duplication and competition between electric suppliers are matters of policy committed to the sound discretion of public service commissions].