**Myer SHARK, Appellant,**

v.

**NORTHERN STATES POWER COMPANY and Public Service Commission of North Dakota, and Northern States Power Company Gas Transportation Credit Tariff, Appellees.**

Civ. No. 910104.

Supreme Court of North Dakota.

Nov. 18, 1991.

**252**

Myer Shark (argued), pro se. Appearance by Peter B. Crary, Fargo.

William W. Binek (argued), and Illona A. Jeffcoat–Sacco, Asst. Attys. Gen., Public Service Com'n, State Capitol, Bismarck, for appellee Public Service Com'n.

R.W. Wheeler (appearance), Wheeler Wolf, Bismarck, and Gene R. Sommers (argued), Minneapolis, Minn., for appellee Northern States Power Co.

GIERKE, Justice.

Myer Shark appeals from a district court judgment affirming a decision by the North Dakota Public Service Commission [PSC] to allow Northern States Power [NSP] to recover its costs for the construction of a natural gas pipeline by retaining up to $368,640 in credits given to certain customers. We reverse the judgment and remand for proceedings consistent with this opinion.

In 1989 NSP sought to implement a project to bring natural gas from the Williston Basin to its eastern North Dakota service area by building a pipeline interconnect with Williston Basin Interstate Pipeline [WBI]. The interconnect would enhance NSP's current supply system in the Fargo service area with a second supply of pipeline natural gas and would also provide for future growth. The plans for the project required WBI to reinforce parts of the existing pipeline system from the Williston Basin to Valley City and to construct a new pipeline from Valley City to Mapleton. NSP was responsible for constructing a new pipeline from Mapleton to Fargo, with an estimated cost of approximately $1,834,-000. On October 3, 1989, NSP filed a revision of its existing gas tariff with the PSC pursuant to Section 49–05–05, N.D.C.C.,[1]

---

1. Section 49–05–05, N.D.C.C., provides:

   *"Changes in tariff rates—Notice to commission—Filing fee.* No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules, classifications, or service which have been filed and published by any public utility, except after thirty days' notice to the commission. The notice shall state plainly the changes proposed and except

seeking additional revenue to recover the cost of constructing the pipeline.

NSP proposed to raise the additional revenue by eliminating the Firm Service Credit Provision of its Purchased Gas Adjustment Clause (transportation and interruptible revenue credits) upon commencement of service from WBI. The transportation and interruptible revenue credits were originally ordered by the PSC in two prior cases. They are a "non-traditional" method of ratemaking ordered by the PSC to deal with NSP's revenues from transportation of gas for large interruptible customers, i.e., qualifying customers who purchase gas directly from wellhead producers and transport it to NSP's town border stations where it is transported through NSP's distribution system to the customers. The PSC and NSP were unable to ascertain the volumes and margins for gas which interruptible customers purchased, and the PSC directed NSP to credit the rates of NSP's other customers with two-thirds of the net revenues from this transportation function.

In this case NSP requested that its filing be handled expeditiously so that various contractual as well as federal and state regulatory aspects of the entire project could be completed in 1990. Pursuant to Section 49–05–06, N.D.C.C.,[2] the PSC suspended NSP's filing on October 24, 1989. On November 30, 1989, NSP amended the filing to limit its recovery to no more than $368,634[3] which was calculated by multiplying NSP's estimated cost for the pipeline of $1,834,000 times a capital cost justification percentage of .201.

On December 5, 1989, PSC issued a notice, setting NSP's filing for hearing in Bismarck on December 27, 1989, and stating that the PSC believed good cause existed to notice the hearing upon less than 20 days notice. The PSC mailed the notice of hearing to interested parties, including Shark, on December 7, 1989. On December 12, 1989, the PSC moved the hearing to Fargo at the request of Fargo's gas customers and North Dakota legislators. On December 18, 1989, Shark, an attorney appearing pro se, petitioned to intervene and

---

for services must be accompanied by a fifty dollar filing fee. The commission for a good cause shown, may allow changes upon less than the notice herein specified, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

2. Section 49–05–06, N.D.C.C., provides:

*"Hearing by commission on proposed change of rates.* Whenever a notice or any schedule stating an individual or joint rate, classification, contract, practice, rule, or regulation, increasing or decreasing, or resulting in an increase or decrease in any rate, shall be filed with the commission, the commission may suspend by motion such rate, classification, contract, practice, rule, or regulation, but the period of suspension thereof shall not extend more than seven months for common carriers by rail and motor vehicle and for other public utilities beyond the time when it otherwise would go into effect. Upon complaint or upon its own initiative without complaint the commission may order a hearing, upon due notice, concerning the propriety of such rate, classification, contract, practice, rule, or regulation. On such hearing, the commission shall establish the rates, classifications, contracts, practices, rules, or regulations proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable. At any such hearing, the burden

to show that the increased rate or proposed change of rate, classification, regulation, rule, or practice is just and reasonable shall be upon the public utility making application therefor. All such rates, classifications, contracts, practices, rules, or regulations not so suspended, on the expiration of thirty days from the time of filing the same with the commission, or of such lesser time as the commission may grant, shall go into effect and be the established and effective rates, classifications, contracts, practices, rules, and regulations, subject to the power of the commission, after a hearing had on its own motion or upon complaint, to alter or modify the same."

3. NSP's amended filing listed the following reason for the amendment:

"The original filed change was designed to enable NSP to retain Transportation and Interruptible Contract Service (ICS) margins equivalent to the revenue requirements of a proposed new line which would connect NSP's Fargo distribution system with WBI. Staff has indicated the original proposed change may enable NSP to recover in excess of the revenue requirements of the line if a substantial increase in transportation or ICS sales occurs.

"The proposed change restricts NSP's incremental cost recovery to $368,634 or less depending on actual transportation and ICS revenue."

to continue the hearing until "early in 1990." On December 20, 1989, the PSC granted Shark's petition to intervene and denied his request for a continuance. According to Shark, he received the PSC's order granting his petition to intervene on December 26, 1989.

At the December 27 hearing Shark renewed his request for a continuance because of the lack of time to prepare. The hearing examiner noted Shark's request and informed him that the PSC would address it at a later date. On January 30, 1990 the PSC issued its decision allowing NSP to retain up to $368,640 of transportation and interruptible revenue credits when the pipeline became operational and requiring NSP to file detailed reports identifying the actual final costs of the project.

Shark appealed to the district court, contending, among other things, that he was deprived of due process and a fair hearing because he did not have adequate time to prepare. The district court concluded that the notice of hearing complied with the law and affirmed the PSC's decision. Shark has appealed.

■ Appeals from decisions of the PSC are governed by the Administrative Agencies Practice Act, ch. 28–32, N.D.C.C. *Northern States Power Co. v. North Dakota Public Service Commission,* 452 N.W.2d 340 (N.D.1990). Section 28–32–19, N.D.C.C., requires affirmance of an administrative agency decision unless

"1. The order is not in accordance with the law.

"2. The order is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions of law and order of the agency are not supported by its findings of fact."

■ Shark contends that he was denied due process and a fair hearing because the time period between the notice of hearing and the hearing was not reasonable in view of the nature, scope, and importance of the hearing. He asserts that that time period did not give him sufficient advance notice of the issues to permit reasonable time for discovery and preparation of his case. He argues that the PSC abused its discretion in denying his request for a continuance.

Section 49–01–07, N.D.C.C., authorizes the PSC to "make ... rules ... for the orderly regulation of proceedings before it, including forms of notice and the service thereof, which shall conform as nearly as possible to those in use in the courts of this state." Pursuant to that statute, the PSC has adopted Section 69–02–04–01, N.D.A.C., which provides:

"*Notice.* In those proceedings in which a hearing is to be held, the commission will, by order or otherwise, assign a time and place for hearing. Notice of the hearing will be posted in the office of the commission, and will be served upon the parties and such other persons that may be entitled to receive notice at least twenty days prior to the date set for the hearing except in cases of emergency."

Section 49–02–02(5), N.D.C.C., also provides:

"*Powers of public service commission with reference to public utilities.* The commission shall have power to:

\*　　\*　　\*　　\*　　\*　　\*

"5. Hold hearings on good cause being shown therefor or on its own motion, and to provide notice thereof and to shorten the period for which notice shall be given prior to hearing, when good cause exists for such action. Such notice, however, shall be reasonable in view of the nature, scope, and importance of the hearing...."

In *Eckre v. Public Service Commission,* 247 N.W.2d 656, 664 (N.D.1976), we considered issues about notice and observed:

"The Legislature has thus delegated to the PSC a discretionary power to promul-

gate such rules and issue such orders to govern the method and scope of notice which may be necessary for the orderly regulation of proceedings before the PSC, so long as the forms of such notice 'conform as nearly as possible to those in use in the courts of this state', and that such notice is 'reasonable in view of the nature, scope, and importance of the hearing'. The PSC's method of giving notice in the instant case will be reversed only by a finding of this court that such method of giving notice was in 'clear abuse of discretion', i.e., failing to be in a manner conducive to the proper dispatch of business and to the ends of justice, and failing to provide notice that was 'reasonable in view of the nature, scope, and importance of the hearing'."

In this proceeding the issues involve the recovery of NSP's investment in the construction of a pipeline from Mapleton to Fargo. Although Shark may have been aware of some specifics of the project before the notice of hearing was served on him, that notice specifically identified the following issues for consideration:

"1. Is it reasonable for the Commission to authorize an increase in revenue recovery in this manner?

"2. Will $368,640 per year provide NSP with a reasonable rate of return on its proposed investment?

"3. Will the proposed pipeline be used or useful for the service and convenience of the public?

"4. Will NSP's customers outside North Dakota benefit from the proposed pipeline, and if so should they share costs?

"5. Are NSP's Transportation and ICS revenue credits an appropriate source for recovery of NSP's proposed investment?"

In considering the nature and scope of these issues, we agree with the district court's observation, made in the context of whether NSP had met its burden of proving that this method of cost recovery was reasonable, that "[t]his case is entangled with complex, technical matters." These matters had been considered by NSP for several months and by the PSC at least since the October filing. In contrast, Shark was afforded only a matter of days to prepare for the hearing.

■ We recognize that NSP asserted a narrow "window of opportunity" because of contractual considerations as well as federal and state regulatory aspects of the entire interconnect project. However, even with perfect hindsight, the time constraints suggested by NSP would not have been jeopardized by a short continuance for a hearing "early in 1990," as requested by Shark. Moreover, the time constraints for a hearing must be balanced with the PSC's obligation to give reasonable notice in view of the "nature, scope, and importance of the hearing" [Section 49–02–02(5), N.D.C.C.], and to establish "just and reasonable" rates. Section 49–05–06, N.D.C.C.

In view of the complex and technical nature of the issues involved in this segment of the interconnect project, the time for Shark to prepare for this hearing did not afford him an opportunity to fairly prepare his case and was not "conducive to the proper dispatch of business and to the ends of justice." *Eckre, supra,* 247 N.W.2d at 664. We conclude the PSC's denial of Shark's request for a continuance was a clear abuse of discretion. We therefore remand to the district court with instructions to remand to the PSC for hearing and an opportunity for Shark to prepare and present his case. However, in the interim, the determination made by the PSC on the merits remains in effect. *See Aggie Investments v. Public Service Commission,* 470 N.W.2d 805 (N.D.1991) [refund was premature where remand was necessary to correct procedural defects]. We express no opinion on the merits of that determination.

■ Shark also contends that the PSC acted without substantial justification and that he is entitled to attorney's fees under

Section 28–32–21.1, N.D.C.C.,[4] North Dakota's version of the Equal Access to Justice Act.

The United States Supreme Court has recently held that a pro se litigant who is also an attorney is not entitled to attorney fees under 42 U.S.C.A. § 1988. *Kay v. Ehrler,* —— U.S. ——, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). We conclude that Shark, an attorney appearing pro se, is not entitled to attorney's fees under Section 28–32–21.1, N.D.C.C.

Because of our resolution of this case, we express no opinion on any remaining issues raised by Shark. We reverse the district court decision and remand with instructions to remand to the PSC for proceedings in accordance with this opinion.

VANDE WALLE, Acting C.J., LEVINE and MESCHKE, JJ., and LAWRENCE E. JAHNKE, District Judge, concur.

LAWRENCE E. JAHNKE, District Judge, sitting in place of ERICKSTAD, C.J., disqualified.

## ON PETITION FOR REHEARING

■ On petition for rehearing Shark asserts that he is entitled to attorney's fees because he was represented by attorneys Ralph Maxwell and Peter B. Crary throughout this litigation. Even if those attorneys did some of the work, which Shark says they did, for which they would be entitled to compensation, we conclude that there was substantial justification for the actions by the PSC under the standard set forth in Section 28–32–21.1, N.D.C.C. Accordingly, we deny the petition for rehearing.

VANDE WALLE, Acting C.J., LEVINE and MESCHKE, JJ., and LAWRENCE E. JAHNKE, District Judge, concur.

LAWRENCE E. JAHNKE, District Judge, sitting in place of ERICKSTAD, C.J., disqualified.

GIERKE, J., a member of the Court when this case was heard and decided, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in the Petition for Rehearing.

**4.** Section 28–32–21.1, N.D.C.C., provides:

*"Actions against administrative agencies—Attorneys' fees and costs.*

"1. In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or an agent of an administrative agency, the court must award the party not an administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and determines that the administrative agency acted without substantial justification.

"2. This section applies to an administrative or civil judicial proceeding brought by a party not an administrative agency against an administrative agency for judicial review of a final agency order, or for judicial review pursuant to this chapter of the legality of agency rulemaking action or a rule adopted by an agency as a result of the rulemaking action being appealed.

"3. Any attorneys' fees and costs awarded pursuant to this section must be paid from funds available to the administrative agency the final order, rulemaking action, or rule of which was reviewed by the court. The court may withhold all or part of the attorneys' fees from any award if the court finds the administrative agency's action was substantially justified or that special circumstances exist which make the award of all or a portion of the attorneys' fees unjust.

"4. Nothing in this section shall be construed to alter the rights of a party to collect any fees under other applicable law."